UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JHONATHAN YANGER LOPEZ
NIEVES,

                    Petitioner,

                                      Case No.: 2:26-cv-11748
v.                                         Hon. Gershwin A. Drain

DIRECTOR OF
ENFORCEMENT AND
REMOVAL OPERATIONS,
IMMIGRATION AND
CUSTOMS ENFORCEMENT,
DETROIT FIELD OFFICE and
WARDEN OF THE MACOMB
COUNTY JAIL,

                    Respondents.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS [ECF No. 1]

Petitioner Jhonathan Yanger Lopez Nieves ("Petitioner") entered the United States near El Paso, Texas on October 3, 2022. Petitioner was arrested by Immigration and Customs Enforcement ("ICE") in April 2026 and has remained detained while his removal proceedings are ongoing. Appearing *pro se*, Petitioner filed the instant Petition for Habeas Corpus, alleging that his detention is unlawful for a variety of reasons. Respondents oppose the Petition.

1

The Court concludes that a hearing will not aid in the disposition of the Petition and will determine the outcome on the briefs. E.D. Mich. L.R. 7.1(f)(2). For the reasons that follow, the Petition for Habeas Corpus [ECF No. 1] is **DENIED WITHOUT PREJUDICE**.

## I.    BACKGROUND

Petitioner Jhonathan Yanger Lopez Nieves is a citizen of Venezuela who entered the United States on October 3, 2022, near El Paso, Texas, without inspection or admission by an immigration officer at a port of entry. ECF No. 5-2, PageID.62. Petitioner was apprehended by immigration officials that same day. *See* ECF No. 5-3, PageID.64. A few days later, immigration officials granted Petitioner temporary parole under 8 U.S.C. § 1182(d)(5)(A) lasting two months (until December 7, 2022). *Id.* They informed Petitioner to report to the local ICE office of his final U.S. destination for case processing. *Id.* Petitioner reported to the Dallas ICE office on December 19, 2022, where he was served with a Notice to Appear and charged with removability under 8 U.S.C. § 1182(a)(6)(A)(i). ECF No. 5-2, PageID.62; ECF No. 5-4. The Notice to Appear formally initiates removal proceedings, and a noncitizen is required to carry it with him at all times as proof of his alien registration. *See* ECF No. 5-4, PageID.65; 8 U.S.C. § 1229(a)

Thereafter, immigration officials released Petitioner on his own recognizance, which is a form of conditional parole under 8 U.S.C. § 1226(a)(2)(B). ECF No. 5-5.

Petitioner was subject to a number of conditions in his order of recognizance, including that he was prohibited from changing his place of residence without permission from the immigration officer on his case. *Id.* at PageID.68.[1]

On April 29, 2026, ICE officers conducting surveillance in the Metro Detroit area witnessed Petitioner driving a vehicle belonging to him along 10 Mile Road in Royal Oak, Michigan. ECF No. 5-6, PageID.72. Petitioner's vehicle had a Michigan license plate and Michigan registration, and Petitioner had a Michigan driver's license. *Id.* In fact, Petitioner had moved to Detroit, Michigan without obtaining permission from his immigration officer. *See id.* at PageID.71–72 (listing Petitioner's home address in Detroit, but noting his immigration records still reflected his home address in Grand Prairie, Texas). The officers performed a traffic stop, confirmed Petitioner's identity, and determined that Petitioner was not in possession of his Notice to Appear or documents that would allow him to remain in the United States legally. *Id.* at PageID.73. The officers obtained a warrant for Petitioner's arrest and arrested him without incident. ECF No. 5-7.

---

[1] Immigration law also requires every noncitizen who is required to be registered to notify the Attorney General of each change of address within 10 days from the date of the change. *See* 8 U.S.C. § 1305(a). Failing to do so is grounds for removal. *See* 8 U.S.C. § 1227(a)(3)(A).

Petitioner's removal proceedings are ongoing. He is represented by counsel in the proceedings. ECF No. 5-9. He also remains detained. Neither he nor his counsel have yet requested a bond hearing.

On May 29, 2026, Petitioner filed the instant Petition for Habeas Corpus. ECF No. 1. Petitioner offers several reasons why his custody is unlawful. First, he argues that his Notice to Appear is defective because it erroneously states that he has not been admitted or paroled before an immigration officer, when in fact he was paroled under 8 U.S.C. § 1182(d)(5)(A). *Id.* at PageID.3. Second, he argues that his immigration documents were not translated or interpreted in Spanish, his native language, and the lack of an interpreter invalidates his consent and understanding of the charges against him. *Id.* Third, he argues that he is entitled to an individualized bond hearing under the Due Process Clause of the Fifth Amendment. *Id.* Fourth, he argues that termination of his § 1182(d)(5)(A) parole without individualized process violates the Due Process Clause of the Fifth Amendment. *Id.* at PageID.6. Fifth, he argues that his prolonged detention hinders his ability to litigate his asylum case. *Id.* at PageID.4.

Respondents reject each of Petitioner's arguments. First, Respondents argue that Petitioner should be required to exhaust administrative remedies regarding the alleged error in his Notice to Appear, and even if the Court does not require him to do so, Petitioner's Notice to Appear is correct. ECF No. 5, PageID.48–49. Second,

Respondents argue that neither the statute nor the Constitution require that the Notice to Appear be translated into the noncitizen's native language, and Petitioner was not prejudiced, because he is represented by counsel and clearly understands the charges against him. *Id.* at PageID.52–53. Third, Respondents argue that immigration officials have not denied Petitioner a bond hearing; rather, Petitioner has never asked for one. *Id.* at PageID.54. Fourth, Respondents argue that immigration officials never terminated Petitioner's first parole because it expired automatically. *Id.* at PageID.57. Finally, Respondents argue that Petitioner's detention does not interfere with his asylum claim and is irrelevant to his asylum claim. *Id.* at PageID.55–56.

## II.    LEGAL STANDARD

Under 28 U.S.C. § 2241, a district court has the "authority to hear applications for habeas corpus by any person who claims to be held 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Rasul v. Bush*, 542 U.S. 466, 473 (2004). "Section 2241 confers jurisdiction to hear habeas corpus challenges to the legality of a noncitizen's detention." *Lopez v. Olson*, 815 F. Supp. 3d 576, 580 (W.D. Ky. 2025). "Although the Court 'may not review discretionary decisions made by immigration authorities, it may review immigration-related detentions to determine if they comport with the demands of the Constitution.'" *Id.* (quoting *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 901 (D. Minn. 2020)).

## III.   DISCUSSION

### A. Petitioner's First Argument

Petitioner's first argument is that his Notice to Appear is defective because it states that he is removable under 8 U.S.C. § 1182(a)(6)(A)(i) for arriving in the United States without admission or parole and not at a port of entry. ECF No. 1, PageID.3. Petitioner *was* paroled, and according to Petitioner, "[b]y basing the current detention on an NTA with fundamental errors, the Government violates due process." *Id.*[2] Respondents argue that Petitioner should be required to exhaust administrative remedies, and that Petitioner's argument fails on the merits.

The Court agrees with Respondents that Petitioner should exhaust his administrative remedies. Requiring a party to exhaust administrative remedies allows agencies to apply their special expertise in interpreting relevant statutes and promotes judicial efficiency. *Shearson v. Holder*, 725 F.3d 588, 593 (6th Cir. 2013). "The basic purpose of the exhaustion doctrine is to allow an administrative agency to perform functions within its special competence—to make a factual record, to apply its expertise and to correct its own errors so as to moot judicial controversies." *Shawnee Coal Co. v. Andrus*, 661 F.2d 1083, 1092 (6th Cir. 1981).

---

[2] Petitioner also seems to argue that the alleged misclassification in his Notice to Appear has subjected him to mandatory detention. *See* ECF No. 1, PageID.3. But, as the Court explains later, Petitioner is not actually subject to mandatory detention. He has simply never asked for a bond hearing.

Where, as here, "Congress has not clearly required exhaustion, sound judicial discretion governs whether or not exhaustion should be required." *Shearson*, 725 F.3d at 593 (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)) (quotation marks omitted). Typically, exhaustion should be a condition for judicial review if it promotes the purposes described above. *Shawnee Coal Co.*, 661 F.2d at 1092–93. However, exhaustion is not required where administrative remedies would be inadequate or futile, where irreparable injury would result unless immediate judicial review is permitted, or where the administrative proceeding would be void. *Id.* at 1093.

Here, Petitioner has not yet raised his objection to the Notice to Appear in the immigration court, but there are procedures for him to do so. The Executive Office for Immigration Review ("EOIR"), the sub-agency of the Department of Justice that is comprised of the immigration courts, provides a procedure allowing a noncitizen to "admit or deny the charges and factual allegations in the Notice to Appear." EOIR Policy Manual, Part II, § 3.14(i), (j). If Petitioner does so and receives a ruling that he disagrees with, he may move for reconsideration and is free to appeal the decision to the Board of Immigration Appeals through the standard appeals process. EOIR Policy Manual, Part II, § 4.8; EOIR Policy Manual, Part II, § 5; EOIR Policy Manual, Part III. All the purposes of exhaustion would be served if Petitioner followed this remedial scheme: it would allow the immigration courts to develop a record on the

issue, apply their immigration expertise to the facts of Petitioner's case, and even correct an error if one was made, thereby saving this Court from expending needless resources on an issue that could have been mooted through administrative channels. *See Shawnee Coal Co.*, 661 F.2d at 1092. There is no reason to believe the administrative process would be futile or ineffective, or that Petitioner faces irreparable harm if the immigration court is tasked with handling this issue.

### B. Petitioner's Second Argument

Petitioner's second argument is that his due process rights were violated because his Notice to Appear and other documents were in English, not Spanish, his native language. ECF No. 1, PageID.7. Therefore, Petitioner argues that he does not understand the terms of his custody or the charges against him, and cannot effectively challenge his custody or removal. *Id.* at PageID.3. Respondents argue that the Due Process Clause does not require these documents to be translated into a noncitizen's native language. They also argue that the Clause is not violated if the noncitizen is informed at some point and given an opportunity to respond. Further, they claim that Petitioner cannot show prejudice. ECF No. 5, PageID.51–52.

The Court agrees with Respondents. The Sixth Circuit is clear that giving notice "in English to a non-English-speaker typically satisfies due process because it puts the alien on notice that further inquiry is needed, leaving the alien to seek help from someone who can overcome the language barrier." *Lopez v. Garland*, 990 F.3d

1000, 1003 (6th Cir. 2021). As such, the Sixth Circuit has repeatedly held that the Notice to Appear need not be in the noncitizen's native language. *See id.*; *Patel v. Sessions*, 751 F. App'x 795, 799 (6th Cir. 2018); *Xinquan Zhong v. Sessions*, 744 F. App'x 921, 924 (6th Cir. 2018). This reasoning easily applies to other notices in the immigration context as well. Petitioner has not alleged any facts to suggest that he was unable to seek help in translating his immigration documents—indeed, Petitioner is represented by counsel in his immigration proceedings.

In any event, to prevail on a due process claim related to an immigration proceeding, "a petitioner must demonstrate actual prejudice, and that the alleged prejudice materially affected the outcome of his or her case." *Mapouya v. Gonzales*, 487 F.3d 396, 416 (6th Cir. 2007). Petitioner cannot show prejudice here. Notably, immigration officers provided an oral interpretation in Spanish to Petitioner when they served him with the Notice to Appear. ECF No. 5-4, PageID.66. They also interpreted and explained the Order of Recognizance to Petitioner in Spanish, ECF No. 5-5, PageID.68, and the warrant for arrest to Petitioner in Spanish. ECF No. 5-7, PageID.75. Moreover, Petitioner is represented by counsel in his ongoing immigration proceedings, where he will continue to be apprised of the case against him as proceedings continue. In other words, Petitioner had ample notice of the conditions of his recognizance, the reason he was arrested, and the charges against him. His interests are also protected by counsel during immigration proceedings.

9

Petitioner has not explained why the immigration documents being in English materially affected his case when he was given an oral interpretation of all the documents in Spanish and is currently represented by an immigration attorney.

### C. Petitioner's Third Argument

Petitioner's third argument is that he is improperly subject to mandatory detention and should be given an individualized bond hearing. ECF No. 1, PageID.6. Respondents argue that Petitioner has not been denied a bond hearing—rather, he simply has not asked for one according to EOIR procedures. ECF No. 5, PageID.53–54.

The Court agrees with Respondents. As noted with respect to Petitioner's first argument, administrative exhaustion is typically required for judicial review. *Shawnee Coal Co.*, 661 F.2d at 1092–93. Here, Petitioner has not exhausted his administrative remedies with respect to bond.[3] When a noncitizen is arrested, an

---

[3] In addition, exhausting Petitioner's administrative remedies would not be futile or ineffective. As Petitioner notes, the Sixth Circuit's decision in *Lopez-Campos v. Raycraft* likely applies to his circumstances and entitles him to a bond hearing—should he request one—under 8 U.S.C. § 1226(a). *See Lopez-Campos v. Raycraft*, 175 F.4th 713, 723 (6th Cir. 2026) (noncitizens who are already present in the U.S. and not actively seeking admission before an immigration officer are entitled to a bond hearing under 8 U.S.C. § 1226(a)). Immigration courts are bound to follow precedent of the circuit court of appeals with jurisdiction over the geographic region where a case occurs. *See In re Garcia*, 28 I. & N. Dec. 693, 695 (B.I.A. 2023). Indeed, immigration authorities in this case seem already to have determined that Petitioner falls under § 1226(a), given that they initially gave him an order of recognizance under § 1226(a) prior to his 2026 arrest. Accordingly, the immigration court in this case must follow *Lopez-Campos*. In addition to not being futile or

Immigration and Customs Enforcement officer makes an initial custody determination about whether the noncitizen will be detained or released on bond. *See* 8 C.F.R. § 236.1(c)(8). If the noncitizen is unhappy with the officer's custody determination, he can request a bond hearing before an immigration judge. *Id.*(d)(1); EOIR Policy Manual, Part II, § 8.3(c). It is only at that point that a noncitizen will go before an immigration judge to litigate the bond issue. Petitioner must attempt that administrative process before he seeks relief in habeas.

### D. Petitioner's Fourth Argument

Petitioner's fourth argument is that his § 1182(d)(5)(A) parole was terminated without "an individualized process," and that "mass terminations of parole benefits without due process are 'arbitrary and capricious.'" ECF No. 1, PageID.6. Respondents argue in opposition that Petitioner's § 1182(d)(5)(A) parole expired by its own terms, so immigration officials did not revoke his parole unlawfully. ECF No. 5, PageID.57.

The Court agrees with Respondents. Pursuant to 8 U.S.C. § 1182(d)(5)(A), the provision under which Petitioner was paroled, the Secretary of the Department of Homeland Security may in his discretion temporarily parole noncitizens on a case-by-case basis for humanitarian reasons or significant public benefit. 8 U.S.C. §

---

ineffective, there is no evidence that Petitioner faces irreparable harm if the immigration court handles his bond hearing.

11

1182(d)(5)(A). Parole under this provision is not considered an admission, and once the purposes of parole have been served, the noncitizen shall "be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Id.* Parole under this provision terminates automatically and without notice at the expiration of the time for which parole was authorized. *See* 8 C.F.R. § 212.5(e)(1). If parole is not terminated automatically, it can only be terminated on notice to the noncitizen and on a case-by-case basis. *See id.*(e)(2); *Kenzhebaev v. Noem*, 820 F. Supp. 3d 647, 656 (W.D. Mich. 2025).

Petitioner's parole expired by its own terms on December 7, 2022. ECF No. 5-3, PageID.64. Therefore, the government did not decide to revoke his parole without process; it simply ended. Petitioner's argument about mass revocations of parole and lack of individualized process are therefore not applicable.[4] The

---

[4] Petitioner cites *Doe v. U.S. Dep't of Homeland Sec.* in support, but it is inapposite. *See* No. 25-cv-12245-ADB, 2026 WL 880442, at *10–*12 (D. Mass. Mar. 31, 2026). In *Doe*, immigration authorities issued blanket notices to certain paroled noncitizens that their parole was being revoked prior to its end date. *See id.* at *2. The notices gave no reasoning for the decision. *Id.* The U.S. District Court for the District of Massachusetts held that prior to revoking parole before its automatic termination, immigration authorities must find that the parole's humanitarian or public-benefit purposes have been served, which is required by regulation. *See id.* at *12; *see* 8 C.F.R. § 212.5(e)(2)(i). This case is not relevant here because Petitioner's parole expired automatically in 2022.

automatic termination of Petitioner's parole in 2022 is not relevant to his arrest or custody in 2026.

### E. Petitioner's Fifth Argument

Petitioner's fifth argument is that his detention hinders his ability to litigate his asylum case. ECF No. 1, PageID.4. Respondents argue that any contention that detention unlawfully interferes with an asylum claim should be rejected because detention is a constitutional part of the removal process, regardless of pending asylum claims. In addition, Petitioner has not explained why detention is hindering his asylum claim. ECF No. 5, PageID.55–56.

The Court agrees with Respondents. Petitioner has identified no authority for the proposition that a person may be entitled to be released from custody while his asylum application is pending in order to better litigate the asylum application. And even if there were authority for that proposition, Petitioner has not explained in what way his asylum application has been affected or prejudiced by his detention. Importantly, he is represented by counsel in his removal proceedings, so he is not personally burdened with the prospect of researching, writing, and arguing against his own removal. In addition, although an asylum applicant bears the burden of proving his entitlement to asylum, he often may satisfy his burden with his own credible testimony alone. *See* 8 U.S.C. § 1158(b)(1)(B)(ii) ("The testimony of the applicant may be sufficient to sustain the applicant's burden without corroboration,

13

but only if the applicant satisfies the trier of fact that the applicant's testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant is a refugee."). To the extent Petitioner needs corroborating evidence, Petitioner has not explained what evidence he needs or how his ability to get that evidence has been affected by his detention. In sum, there is no reason to believe that Petitioner's detention has affected his asylum application.

## IV.   CONCLUSION

For the reasons explained above, the Court finds in favor of Respondents on each of the grounds that Petitioner raised in support of habeas corpus. Accordingly, the Petition for Writ of Habeas Corpus [ECF No. 1] is **DENIED WITHOUT PREJUDICE.** If Petitioner follows the administrative procedures required to request bond and is denied bond in an unconstitutional or unlawful manner, or if Petitioner's detention otherwise becomes unconstitutional or unlawful, Petitioner may file a new petition for habeas corpus.

**SO ORDERED.**

Dated:  July 17, 2026                    /s/Gershwin A. Drain
                                         GERSHWIN A. DRAIN
                                         United States District Judge

14